FILED'11 JAN 27 14:16 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

MARY E. HOGANSEN,                                          Civil No. 09-6240-CL

      Plaintiff,                          REPORT AND RECOMMENDATION

          v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Commission,

      Defendant.

CLARKE, Magistrate Judge.

      Plaintiff Mary E. Hogansen brings this action pursuant to section 205(g) of the Social

Security Act, as amended (Act), 42 U.S.C. § 405(g), to obtain judicial review of the

Commissioner's final decision denying plaintiff's application for disability insurance benefits.

For the several reasons set forth below, the decision of the Commissioner should be reversed and

remanded for further administrative proceedings.

## BACKGROUND

      Plaintiff applied for disability insurance benefits alleging disability commencing June 13,

2003. Her applications were denied. Plaintiff requested a hearing, which was held before an

Administrative Law Judge (ALJ) on September 17, 2008. Plaintiff, represented by counsel,

appeared and testified, as did a vocational expert. On January 13, 2009, the ALJ rendered an adverse decision, and the Appeals Council denied plaintiff's request for review.

At the time of the hearing and the ALJ's decision, plaintiff was fifty-one years old. Plaintiff has at least a high school education. She has relevant past work experience as a deli manager. Plaintiff alleges disability as of June 13, 2003, based upon degenerative disk disease, nerve/tissue damage, arthritis, pain syndrome, and neck and shoulder problems. The relevant medical evidence is discussed below.

## STANDARDS

This Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court considers the record as a whole, and weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence, Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."  Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Under sentence four of 42 U.S.C. § 405(g), the Court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).  In the present case, the ALJ found that plaintiff engaged in substantial gainful activity during the period June 13, 2003, through September 30, 2005, and that she had not engaged in substantial gainful activity from October 1, 2005, through the date of the decision.  (Tr. 12-13.)

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that plaintiff's neck pain, status post cervical fusion, right shoulder arthritis/bursitis (non-dominant upper extremity) were severe impairments. (Tr. 13-15.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that plaintiff's impairments, either singly or in combination, were not severe enough to meet or medically equal any of the listed impairments. (Tr. 15.)

In step four, the Commissioner determines whether the claimant can still perform her "past relevant work." If the claimant is so able, then the Commissioner finds the claimant "not disabled." Otherwise, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week. Social Security Ruling (SSR) 96-8p. The RFC is based on all relevant evidence in the case record, including the treating

4 - REPORT AND RECOMMENDATION

physician's medical opinions about what an individual can still do despite impairments. Id. In

this case, the ALJ found that plaintiff retains the RFC to perform light work

> except she can stand and/or walk about 6 hours in an 8-hour workday; she can sit
> about 6 hours in an 8-hour workday; she should only occasionally engage in
> overhead lifting and push/pull with her upper extremities; she must have the
> option to sit or stand as necessary; she must avoid holding her head in one
> position for prolonged periods of time; and she is limited to tasks no more
> complicated than 1 to 3 step tasks due to pain and fatigue.

(Tr. 15-17.)  The ALJ found that plaintiff could not perform her past relevant work.  (Tr. 17.)

Accordingly, the inquiry moved to step five.

In step five, the burden is on the Commissioner to establish that the claimant is capable of

performing other work that exists in the national economy.  Yuckert, 482 U.S. at 141-42; 20

C.F.R. §§ 404.1520(f), 416.920(f).  If the Commissioner fails to meet this burden, then the

claimant is deemed disabled.  Here, the ALJ found that plaintiff retained the residual functional

capacity to perform a significant number of other jobs existing in the national economy.  (Tr. 17-

18.)  Therefore, the ALJ found that plaintiff was not under a disability.  (Tr. 10, 18.)

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed because it is not supported by

substantial evidence and because it is based on the application of improper legal standards.

Plaintiff argues that the ALJ erred by (1) failing to give any reasons to reject a crucial part of the

opinion of an examining physician, Dr. Kurt Brewster; (2) failing to give any reasons to reject the

disability opinion and limitations prescribed by her treating physician, Dr. Beth E. Blumenstein;

(3) failing to give sufficient reasons to reject her complaints and testimony; and (4) the ALJ's

ultimate findings were flawed because the findings were based on faulty vocational expert testimony.  Defendant contends that the ALJ properly evaluated these issues.

The court will address plaintiff's contentions in a different order than set out in the parties' briefs.


**Plaintiff's Testimony**

Plaintiff contends that the ALJ's reasons for discounting her complaints and testimony were less than clear and convincing.  Defendant responds that the ALJ properly discounted plaintiff's credibility.

In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p.  The first stage is the Cotton test, Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986).  Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged.

Under the second part of the analysis, the Commissioner must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms, evaluating the intensity, persistence, and limiting effects of the claimant's symptoms.  See SSR 96-7p.  Unless affirmative evidence of malingering is suggested in the record, the ALJ can reject a claimant's symptom testimony regarding the severity of symptoms "only if he makes specific findings stating clear and convincing reasons for doing so."  Smolen, 80 F.3d at 1283-84; Dodrill v. Shalala, 12 F.3d

915, 918 (9th Cir. 1993); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir.

2008) (and cases cited). General findings are insufficient; rather, the ALJ must identify what

testimony is not credible, and what evidence suggests that the testimony is not credible. Reddick

v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The Commissioner cannot reject a claimant's

symptom testimony solely because it is not fully corroborated by objective medical findings.

Cotton, 799 F.2d 1403.

> In determining a claimant's credibility the Commissioner may consider, for example:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation
> for lying, prior inconsistent statements concerning the symptoms, and other
> testimony by the claimant that appears less than candid; (2) unexplained or
> inadequately explained failure to seek treatment or to follow a prescribed course
> of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility
> of the symptom testimony, the ALJ must also consider the factors set out in SSR
> 88-13. . . . Those factors include the claimant's work record and observations of
> treating and examining physicians and other third parties regarding, among other
> matters, the nature, onset, duration, and frequency of the claimant's symptoms;
> precipitating and aggravating factors; functional restrictions caused by the
> symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284; SSR 96-7p; 20 C.F.R. §§ 404.1529(c); 416.929(c).

Here, plaintiff has produced objective evidence of an impairment which could produce

some degree of the symptoms alleged by her. There is no evidence of malingering in the record.

The ALJ first found plaintiff's ability to independently lift heavy pots of boiling water to

drain pasta or potatoes when preparing potato salad or pasta for twenty people exceeded her

stated lifting limitation of ten pounds. She also found that plaintiff's ability to peel and cut

potatoes for twenty people was inconsistent with her expressed inability to use her hands for a

sustained period. (Tr. 16.) At the hearing, plaintiff testified she could lift 10 pounds; she can't

lift a stack of plates to put then in the cupboard[1] or her 15 pound dog without a struggle. (Tr. 33.) When plaintiff testified that she made pasta for a pot luck for about 20 people and drained the water from the boiling pasta, the ALJ asked: "Do you just lift the pot up and dump it into a colander?" and plaintiff responded, "I usually have to do it in stages, you know, do like one bag at a time. I've learned to adapt to do things in a lighter slower basis through all this." (Tr. 35.) She explained what she means by cooking in stages as cooking "One bag at a time for pasta and let that drain" and then take a break, and then do the same thing again, working as long as she can, for 10-15 minutes, before taking a break. (Tr. 39-40.) Plaintiff testified that she can use her hands at table height for 15 minutes; 10-15 minutes if she stood and peeled potatoes. When it's a pot luck, she "just do[es] a regular standard," so it takes her maybe 10 minutes to peel already cooked potatoes for potato salad. (Tr. 38-39.) The court finds that the reasons given for discounting plaintiff's testimony in this regard are not supported by substantial evidence. There is no evidence that plaintiff lifts heavy pots of boiling water when cooking for 20 people; she testified that she cooked in stages, cooking and draining one bag at a time. Her testimony as to her ability to use her hands when cooking for a potluck is entirely consistent with her stated limitation of use of her hands at table height.

The ALJ found that plaintiff's credibility is eroded by her active participation in AA and Alanon which she found to be inconsistent with her stated exertional limitations. (Tr. 16.) Plaintiff testified that she could sit for 20 minutes,[2] stand for 20 minutes, and walk for 20

---

[1]    In her decision, the ALJ stated that plaintiff testified she could not lift a sack of potatoes.

[2]    The ALJ erroneously stated in her decision that plaintiff estimated that she could sit for 10 minutes. (Tr. 16.)

8 - REPORT AND RECOMMENDATION

minutes.  For exercise, she goes for half-hour walks a couple times a week; she tries to push

herself and is "pretty fatigued" when she's done.  (Tr. 32-33.)  Five times a week she attends AA

meetings and Alanon meetings which last an hour to an hour and one-half; afterwards she stays

and visits ten to fifteen minutes.  (Tr. 34.)  At the meetings she needs to get up and move around;

she stands up, stretches a little bit, moves her shoulders and neck, and moves around a little bit

before sitting again, and then doing it again.  (Tr. 39.)   The Court does not agree that plaintiff's

attendance at meetings is inconsistent with her claimed exertional limitations and is not a clear

and convincing reason for discrediting plaintiff's testimony.

The ALJ found that plaintiff's testimony that she does not take any pain medication

indicated that "the side effects of the medications are more vexing than the pain she currently

experiences."  (Tr. 16.)  At the September 2007 hearing, plaintiff testified that she was not taking

any medications.  She stated that she hasn't had "a whole lot of relief" of pain from any pain

medication and it made her feel dysfunctional.  (Tr. 37.)  She also testified that when she first had

the injury she took a lot of ibuprofen for pain, which irritated her stomach, intestinal tract, and

bowels.  Since that time, she's learned that ibuprofen is "really bad for you to do."  (Tr. 42.)

Plaintiff's testimony is supported by the record.  Before and after her fusion surgery in 2004 the

record shows that plaintiff is "intolerant" of over-the-counter NSAIDs, DayPro, and Vioxx due to

GI intolerance and rash; she was given Bextra due to her intolerance. (Tr. 298-302.)  At her

neurosurgical initial consultation with Catherine J. Gallo, M.S., in April 2004, she reported that

anti-inflammatories did not help her pain and she did not wish to take narcotics (Tr. 261), and

Martha J. MacRitchie, M.D., who gave ongoing care for neck and arm pain, in October 2004,

reported that plaintiff was unable to tolerate a variety of anti-inflammatories due to GERD and

9 - REPORT AND RECOMMENDATION

diarrhea (Tr. 233-34).  On this record, the ALJ's stated reason for discounting plaintiff's

testimony is not clear and convincing.  Minimal treatment is not a proper basis for discounting

credibility where the claimant has a good reason for not seeking more aggressive treatment.

Carmickle, 533 F.3d at 1162 (failure to take other pain medication because of adverse side

effects).

       In his response, defendant refers to the ALJ's finding in her decision that plaintiff's

assertion that she sought medical treatment infrequently between October 2005 and May 2007

due to a lack of funds or insurance is inconsistent with her statement to Dr. Blumenstein in May

2007 that she received $1,600 per month.  (See TR. 16.)  Plaintiff replies that $1,600 per month

is not sufficient funds to cover one's basic needs as well as medical treatment, and the ALJ's

reason is not a valid one for discounting her complaints.  In May 2007, plaintiff's treating

physician, Beth E. Blumenstein, M.D., noted in her intake note that plaintiff received $1600 a

month and it was hard to make it on this. (Tr. 507-08.)  At a June 2007 physical examination, Dr.

Blumenstein noted that plaintiff "only has so much money for her health care each year . . . ."

(Tr. 506.)  Plaintiff testified at the September 2007 hearing that she did not have insurance, but

that she did have medical insurance when she worked for Safeway.[3]  (Tr. 40.)  A failure of a

claimant to receive medical treatment at a time when he is unable to pay or when he has no

medical insurance cannot support an adverse credibility finding.  Orn v. Astrue, 495 F.3d 625,

638 (9th Cir. 2007) (citing SSR 96-7p; Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995)); see

Carmickle, 533 F.3d at 1162.

---

    [3]   It appears that plaintiff stopped working for Safeway in September-October 2005, about the
same time she stopped going to Dr. Blumenstein, until May 2007.

10 - REPORT AND RECOMMENDATION

Although not every reason relied on by the ALJ to discount a claimant's credibility is upheld on review, the credibility determination will be sustained if the determination is supported by substantial evidence. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, the ALJ also discounted plaintiff's testimony because she sought medical treatment infrequently between October 2005 and May 2007 which was inconsistent with the severity of her subjective complaints. (Tr. 16.) As discussed, supra, plaintiff had a good reason not to seek medical treatment due to lack of insurance and lack of funds. See Carmickle, 533 F.3d at 1162; Orn, 495 F.3d at 638. This reason is not a sufficient reason to discount plaintiff's credibility.

The ALJ also found that plaintiff overstated the amount of assistance required while she was employed at Safeway. (Tr. 16.) In August 2008, a Safeway human resources advisor completed a questionnaire from the agency. It was stated that plaintiff received unusual assistance or supervision in the form of additional support to complete tasks and supervise department of 1-2 hours per day in an 8-hour day. (Tr. 148.) Even if this reason stated by the ALJ is a sufficient and proper reason for discounting plaintiff's complaints and testimony, the Court finds that this reason alone does not support the ALJ's credibility determination. On this record, the Court finds that the ALJ did not provide clear and convincing reasons for finding that plaintiff's allegations and testimony were not entirely credible and, therefore, the ALJ erred.

**Physicians' Opinions**

Generally, the Commissioner gives more weight to the opinion of a treating source or examining source than to a source who has not treated or examined a claimant. 20 C.F.R. §§

404.1527(d)(1)(2), 416.927(d)(1)(2); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995);

Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). A treating physician is one who is

employed to cure. Magallanes, 881 F.2d at 751. His opinion is given more weight because he

has a greater opportunity to know and observe the patient. Id. Controlling weight will be given

to a treating physician's opinion on the issues of the nature and severity of a claimant's

impairment(s) if the opinion "is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence" in the case

record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "The treating physician's opinion is not,

however, necessarily conclusive as to either a physical condition or the ultimate issue of

disability." Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 &

n.7 (9th Cir. 1989)); 20 C.F.R. §§ 404.1527(e), 416.927(e); see also Montijo v. Secretary of

HHS, 729 F.2d 599, 601 (9th Cir. 1984).

If the ALJ chooses to disregard a treating physician's or an examining physician's

opinion, and that opinion is not contradicted by another doctor, he must set forth clear and

convincing reasons for doing so. Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v.

Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984). If a treating or examining physician's opinion is

contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons,

based on substantial evidence in the record, for disregarding the opinion of the treating or

examining physician. Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th

Cir. 1996). The ALJ can meet this burden by setting out a detailed and thorough summary of the

facts and conflicting medical evidence, then stating his interpretation, and making findings.

Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986); Rodriguez, 876 F.2d at 762.

12 - REPORT AND RECOMMENDATION

**Dr. Brewster**

Plaintiff contends that, while the ALJ gave great weight to the opinions of examining physician, Dr. Brewster, and the state medical reviewers, she did not include the limitations of reaching, grasping and pulling only occasionally in the RFC. Defendant does not specifically address plaintiff's contention in his response.

Plaintiff underwent a comprehensive orthopedic examination by Kurt Brewster, M.D., an internal medicine consultant, on October 15, 2007, at the request of the agency. Dr. Brewster reviewed certain medical records from November 2004 through June 2007, which he noted were sparse. As to plaintiff's complaint of lumbar spine, degenerative disc disease, plaintiff characterized her pain as sharp to stabbing, worsening with lifting. As to her complaint of neck and shoulder pain, plaintiff reported it began in 2001 after a 1999 on the job injury. She had physical therapy for a few years and surgery on herniated discs in May 2004. Dr. Brewster conducted a thirty minute examination including range of motion, motor strength/muscle bulk and tone, fine motor, sensory, and deep tendon reflexes. Dr. Brewster assessed plaintiff with the functional ability for: walking/standing 6 hours in an 8-hour day with 15 minute breaks every two hours; no restriction in sitting; "Lifting and/or Carrying Frequently/Occasionally" was "20 pounds maximum, 10 pounds"; postural restriction of occasional "reaching, grasping and pulling" (Tr. 568); and no restriction in manipulative function. (Tr. 559-69.)

The ALJ recited Dr. Brewster's functional assessment in her decision. (Tr. 16.) She gave "great weight" to the findings and opinions of Dr. Brewster and the state medical reviewers "as they are consistent with the evidence of record." (Tr. 17.) State non-examining physician Mary

13 - REPORT AND RECOMMENDATION

Ann Westphall, M.D., completed a physical RFC assessment (PRFCA) in October 2007. She found that the objective findings did not support the severity of restrictions reported by plaintiff but it would be reasonable that she would have some physical restrictions. She found that plaintiff's stated limitations appeared to be partially credible. Dr. Westphall noted Dr. Brewster's assessment including, in pertinent part, his opinion that plaintiff was limited to occasional "reaching, grasping, and pulling" (Tr. 576), which she noted was based on objective findings as well as subjective complaints. Dr. Westphall gave Dr. Brewster's opinion consideration but not controlling weight. She assessed plaintiff in pertinent part with the ability to lift 20 pounds occasionally and 10 pounds frequently, and the unlimited ability to push and/or pull (including operation of hand and/or foot controls). As to manipulative limitations including reaching in all directions including overhead, Dr. Westphall found that "None" were established (Tr. 573). (Tr. 570-77.) In January 2008, Richard Alley, M.D., completed a PRFCA. He noted Dr. Bewster's examination and his opinion of "MSO of Light with occasional reaching, grasping and pulling." (Tr. 599.) Dr. Alley found that plaintiff could perform light work, with the ability to lift 20 pounds occasionally and 10 pounds frequently. He found that plaintiff's ability for push and/or pull was "unlimited" (Tr. 593) and, as to manipulative limitations, found that plaintiff was "limited" in her ability of "Reaching in all directions (including overhead)" (Tr. 595). In his conclusion, Dr. Alley recommended "BORH is limited to occasional"[4] (Tr. 599). (Tr. 592-99.)

The ALJ included occasional push/pull with upper extremities in her RFC and, therefore, she adopted Dr. Brewster's opinion in that regard since Dr. Westphall and Dr. Alley found that

---

[4]     Plaintiff suggests that "BORH" stands for bilateral overhead reaching (Pl. Brief at 4 n. 1); defendant noted Dr. Alley's opinion that plaintiff was limited to occasional reaching in all directions, including overhead (Def. Brief at 5).

14 - REPORT AND RECOMMENDATION

plaintiff had the ability for unlimited push/pull.[5]  However, while the ALJ gave "great weight" to

the opinions of Dr. Brewster, Dr. Westphall, and Dr. Alley, she offered no reason(s) for rejecting

Dr. Brewster's opinion that plaintiff was functionally limited to occasional reaching, and Dr.

Alley's opinion that plaintiff was limited to occasional reaching in all directions.  The ALJ found

only that plaintiff was limited to occasional overhead lifting but did not address her ability for

reaching in other directions.  The ALJ erred in his treatment of Dr. Brewster's opinion, and the

opinion of Dr. Alley, as well.

Defendant asserts that the ALJ properly resolved the conflicting medical evidence but

contends that, if there was error, it was harmless.  However, defendant's assertion is general and

he does not explain how any error is harmless.  If Dr. Brewster's and Dr. Alley's opinions that

plaintiff is limited to only occasional reaching in all directions is accepted, the hypothetical posed

to the vocational expert (VE) is incomplete and the jobs identified by the VE cannot be relied

upon.[6]  The error found by the Court is not harmless.


### Dr. Blumenstein

Plaintiff also contends that the ALJ did not give sufficient reasons to reject limitations

found by her treating physician, Dr. Blumenstein.  She contends that the ALJ's reasons for

---

[5]    Plaintiff contends that the ALJ erred in rejecting that part of Dr. Brewster's opinion that she
was limited to occasional "grasping and pulling" (Tr. 568).  This was Dr. Brewster's opinion as to
plaintiff's postural restriction but he found no restriction in plaintiff's manipulative function ("No fine
or gross deficits by history or by exam" (Tr. 568)).  The court construes his opinion as limiting pulling
but not grasping, per se, which is generally considered a manipulative function.  (See Tr. 571-73, 594-
95.)

[6]  Moreover, as discussed infra, each of the jobs identified by the VE require frequent reaching
which is inconsistent with a finding that plaintiff is limited to only occasional reaching.

rejecting Dr. Blumenstein's opinions were generic and not accurate and were, thus, not convincing or legitimate. Plaintiff contends that the court should credit the opinion of Dr. Blumenstein and direct an award of benefits. Defendant contends that the ALJ gave sufficient reasons for rejecting Dr. Blumenstein's opinions.

The administrative record includes treatment records from plaintiff's treating physician, Beth E. Blumenstein, M.D., for the period February 2004 to June 2007. Records relevant to plaintiff's arguments show that, in June 2004, Dr. Blumenstein assessed plaintiff with right shoulder bursitis and impingement.[7]  (Tr. 533-34; see 531.)

On recheck for back pain in December 2004, Dr. Blumenstein noted on musculoskeletal examination that plaintiff was mildly tender over the midline and had discomfort with neck range of motion especially to the right; she had spasming over the paracervical muscles especially on the right. Dr. Blumenstein was uncertain as to the cause of continued midline neck pain. (Tr. 527-28.)

On recheck of plaintiff's neck on February 24, 2005, Dr. Blumenstein noted that plaintiff had seen Dr. Dunn who believed that plaintiff has fibromyalgia. On objective examination, plaintiff was not significantly point tender with palpation over the cervical spine. She assessed plaintiff with chronic pain and fibromyalgia; plaintiff was status post cervical neck surgery with continued pain despite surgery. (Tr. 525-26.)

On a recheck on neck pain in March 2005, plaintiff was seen for neck spasm of several days duration. On examination, plaintiff was tender over the cervical midline and over the left

---

[7]    Dr. Blumenstein noted that plaintiff had undergone a cervical spinal fusion and had been cleared by her surgeon to return to work for 40 hours per week with limitations of no lifting greater than 25 pounds and no pushing or pulling. (Tr. 533; see Tr. 275.)

16 - REPORT AND RECOMMENDATION

cervical muscles, with normal strength in the upper extremities. Plaintiff was to take pain medication she had at home. (Tr. 521-22.)

It was noted by Dr. Blumenstein on March 8, 2005, that plaintiff had been put on leave from work the previous week due to acute exacerbation of her neck and upper back pain; plaintiff had improved during her time off. Plaintiff recognized that perhaps she was lifting too much at work; Dr. Blumenstein stated plaintiff should not lift more than 10 pounds and not do repetitive or over the head type work. (Tr. 519-20.)

In May 2005, on recheck, plaintiff continued to have significant muscle spasming along the cervical paraspinal muscles, bilateral trapezius muscles at the base of the skull and sometimes into the neck anteriorly. Plaintiff reported she was sometimes lifting more than 10 pounds at work. On objective examination, plaintiff had some muscle spasming and tightness around the paracervical muscles at the base of the skill and the trapezius muscles bilaterally. Dr. Blumenstein noted in her assessment that plaintiff's remaining problems seemed to be "more myofacial" (Tr. 518), but Dr. Blumenstein suggested continued physical therapy and trying acupuncture. (Tr. 517-18.)

Plaintiff continued to have chronic spasming in her cervical paraspinal muscles, bilateral trapezius muscles, and shoulders, on recheck in June 2005. (Tr. 516.)

Dr. Blumenstein saw plaintiff in September 2005 "for paperwork" relating to whether plaintiff had the physical skills required for four different jobs at Safeway after plaintiff had been "essentially fired" as deli manager at Safeway (Tr. 510). Plaintiff told Dr. Blumenstein that she could not turn her head from side to side repeatedly, and would hurt her neck if she had to do so. Plaintiff also reported she has a hard time lifting her arms up above of elbow level on a repeated

17 - REPORT AND RECOMMENDATION

basis. Dr. Blumenstein discussed the potential that plaintiff may not be able to work and may

have to apply for disability. Dr. Blumenstein noted: "I do not see how the patient could find

work if she is unable to turn her head on a repeated basis but that is not for me to determine." No

exam was done. In her assessment, Dr. Blumenstein opined in pertinent part:

> The patient seems to have soft tissue tenderness and myofacial pain over the
> cervical, thoracic, and sternocleidomastoid muscles. She reports an inability to do
> such physical labor as lifting her arms up to her elbow level or turning her head
> from side to side. In addition, she cannot lift more than 5 to 10 lb. Given this, I
> am concerned that the patient may not be able to work. . . .

(Tr. 511.) She stated that she did not know where that left plaintiff, but she filled out the forms

and plaintiff would proceed from there. (Tr. 510-11.)

Plaintiff was seen in October 2005 for follow up. Plaintiff continued to complain of

shoulder pain and neck spasm. No exam was done. Dr. Blumenstein's assessment was chronic

neck pain; status post cervical spinal fusion in May of 2004 of disk herniation. She stated: "It is

my medical belief that the cervical disk herniation, even though it has been repaired, is at least in

part to blame for her chronic neck pain." Plaintiff was also having right shoulder pain. Dr.

Blumenstein believed an IME should be done. Plaintiff remained on FMLA leave. (Tr. 508-09.)

Plaintiff was seen again by Dr. Blumenstein in May 2007 and plaintiff was to return for a

physical exam. (Tr. 507-08.)

On physical examination in June 2007, Dr. Blumenstein noted plaintiff's history of

chronic neck pain due to work-related injury, plus fibromyalgia, depression, and arthritis. In her

assessment, Dr. Blumenstein noted that plaintiff would pursue social security disability. (Tr.

505-06.)

18 - REPORT AND RECOMMENDATION

In March 2008, Dr. Blumenstein completed a questionnaire prepared by plaintiff's attorney.  She answered that plaintiff's diagnoses were 1) cervical spine discectomy and fusion, with cervical radiculopathy and 2) right shoulder arthritis and bursitis, based upon objective medical findings of cervical spine xray February 21, 2005 C4-C6 discectomy and fusion, with some straightening of spine.  She opined that, based on the definitions given, plaintiff was not capable of light work because she cannot lift more than 10 pounds.  She opined that plaintiff was "maybe" capable of a full range of sedentary work, but that plaintiff has to move around and cannot sit for more than ½ hour (Tr. 608).  She also opined that plaintiff was unable to sustain either sedentary or light work "not full time" without excessive absences or work breaks (Tr. 609).[8]  (Tr. 606-09.)

Plaintiff contends that the ALJ erroneously rejected two opinions of Dr. Blumenstein.  In her discussion of plaintiff's RFC, the ALJ rejected Dr. Blumenstein's March 2008 opinion, supra, that plaintiff was only capable of lifting 10 pounds and would be unable to sustain either

---

[8]    In pertinent part, the questionnaire included the following definitions:
Sedentary work is defined as work which involves no more than 10 pounds at one time and occasionally lifting or carrying articles such as docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting a certain amount, walking and standing as necessary in carrying out job duties, jobs are sedentary if walking and standing are required no more than two hours in an eight hour day and the other sedentary criteria are met.

Light work involves lifting no more than 20 pounds at one time . . . .

In addition, a person must be capable of performing the full range of the activities in each category on a full-time basis without excessive absences or breaks beyond the normal time allowances of 15 minutes each in the morning and in the afternoon and a 30-60 minute lunch break.  Excessive absences is defined as absences greater than two days per month on average.
(Tr. 608.)

19 - REPORT AND RECOMMENDATION

sedentary or light work.  The ALJ found that Dr. Blumenstein's assessment was not based on a

recent examination but was based on plaintiff's subjective complaints, and that Dr. Blumenstein's

opinion was not consistent with the other evidence of record; the ALJ gave Dr. Blumenstein's

opinion little weight.  (Tr. 16.)  The ALJ further stated that she gave more weight to the opinion

of Dr. Brewster than that of Dr. Blumenstein because of the thorough nature of Dr. Brewster's

orthopedic examination versus the general health examination performed by Dr. Blumenstein.

(Tr. 17.)

As to the first reason given by the ALJ, an ALJ may give a treating physician's opinion

less weight when it is based upon a claimant's subjective complaints and the ALJ has properly

discredited claimant's complaints, Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th

Cir. 2009); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008), as defendant argues, but,

here, the court has found that the ALJ did not properly discount plaintiff's complaints and

testimony, supra.  Thus, the ALJ could not discount Dr. Blumenstein's opinion for this reason.

As to the ALJ's second reason for discounting Dr. Blumenstein's opinion, the ALJ does not

identify the other evidence to which she refers.  The Ninth Circuit has found that "conclusory

reasons will not justify an ALJ's rejection of a medical opinion."  Regennitter v. Comm'r of Soc.

Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999).  The ALJ's third reason also is not a sufficient

reason to discount Dr. Blumenstein's opinion.  While Dr. Brewster's orthopedic evaluation was

thorough, he saw plaintiff on one occasion for thirty minutes, whereas Dr. Blumenstein had an

ongoing doctor-physician relationship with plaintiff for many months.  The nature and extent of

this relationship adds significant weight to Dr. Blumenstein's opinion.  See Orn v. Astrue, 495

F.3d 625, 633 (9th Cir. 2007); Lester, 81 F.3d at 833; 20 C.F.R. §§ 404.1527(d)(2);

20 - REPORT AND RECOMMENDATION

416.927(d)(2). As a treating physician, Dr. Blumenstein brings a "unique perspective to the medical evidence." 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); Lester, 81 F.3d at 833; Orn, 495 F.3d at 633. The ALJ's reasons for discounting Dr. Blumenstein's March 2008 opinion are not legitimate or supported by substantial evidence in the record.

Plaintiff also contends that the ALJ did not give any explanation as to why she rejected Dr. Blumenstein's September 1, 2005, opinion that plaintiff could not turn her head, or lift up her arms, on a repeated basis. In her discussion of whether plaintiff had any severe impairments, the ALJ set out certain provider notes of Dr. Blumenstein's including her September 2005 note, supra. The ALJ noted that Dr. Blumenstein did not examine plaintiff during her September 2005 office visit, but simply filled out forms that plaintiff instructed her to sign for her workers compensation claim. Of relevance to plaintiff's contention, the ALJ stated that Dr. Blumenstein expressed concern that plaintiff might not be able to work but her opinion was apparently based on plaintiff's self report rather than an exercise of independent medical judgment. (Tr. 14 (citing Ex. 15F, 7 & 8, Tr. 510-11).) As noted above, however, the court has found that the ALJ's discounting of plaintiff's testimony was not based on substantial evidence and the ALJ's stated reason for rejecting Dr. Blumenstein's September 1, 2005, opinion is, therefore, not supported or specific and legitimate.

It is also noted that, in the ALJ's discussion of treatment notes when determining severe impairments, she refers to Dr. Blumenstein's February 2005 provider notes in which Dr. Blumenstein mentions the possibility of fibromyalgia (Tr. 14), but found that Dr. Blumenstein

21 - REPORT AND RECOMMENDATION

did not include documented tender points (Tr. 525-26, Ex. 15F, 23). As plaintiff points out, Dr. Blumenstein relied on the report of Joseph Scott Dunn, M.D., who examined plaintiff on February 3, 2005, upon referral by Dr. Blumenstein. Upon examination, Dr. Dunn found 14/16 fibromyalgia tender points (Tr. 255) and included fibromyalgia on plaintiff's problem list. A copy of his report was copied to Dr. Blumenstein. (Tr. 249-58; see Tr. 525.)

The Court concludes that the ALJ erred in her treatment of Dr. Blumenstein's opinions.

## Vocational Expert Testimony

Plaintiff contends that the jobs proposed by the VE were not consistent with the ALJ's hypothetical and there is no evidence to support any deviation from the Dictionary of Occupational Titles (DOT). She also contends that the jobs identified by the VE all require frequent reaching, which is not consistent with Dr. Brewster's opinion, as to which the ALJ gave "great weight," that plaintiff was limited to reaching only occasionally. See discussion, supra. Defendant does not specifically address plaintiff's contentions.

At the hearing, after the VE had identified certain jobs that plaintiff could perform based upon the ALJ's hypothetical, the ALJ asked: "In it, well, you described all of the jobs in your earlier response as SVP2, unskilled, so if an individual were limited to performing simple, repetitive tasks, would that, that's equivalent to unskilled work, those jobs would still be applicable, is that correct?" The VE responded, "Yes," given the qualifier testified to earlier. (Tr. 53.) The VE had testified that, as to the jobs of meter reader and guard security, certain publications "indicate as normally performed, this job can be learned in 30 days or less, tantamount to SVP2." (Tr. 50-51.) The VE did not address the reasoning level of the jobs

identified but only the specific vocational preparation (SVP), probably because the ALJ equated a limitation to simple, repetitive tasks as equivalent to unskilled work.  In her decision, the ALJ stated this limitation as "limited to tasks no more complicated than 1 to 3 step tasks."  (Tr. 15.)

As plaintiff points out, the reasoning level of the identified jobs–general educational development (GED)--is a separate DOT score from the SVP level, and was not discussed by the ALJ or VE.  See Meissl v. Barnhart, 403 F. Supp.2d 981, 983 (C.D. Cal. 2005) (vocational consideration directly on point to limitation to simple tasks performed at a routine pace is job's reasoning level score).  The jobs of meter reader and security guard each require level 3 reasoning (DOT 209.567-010, 307.667-034), but the job of assembly machine tender is level 2 reasoning (DOT 754.685-014).  Most courts have held that a person limited to simple, routine, repetitive tasks can perform reasoning level 2 jobs.  See Koch v. Astrue, No. CV 08-609 PK, 2009 WL 1743680, at *17-*18 (June 15, 2009) ("Level two reasoning is consistent with an ability to perform only simple, routine tasks"; evidence showed that claimant could understand and remember simple, three-step instructions); Ball v. Astrue, No. CV-09-764-HU, 2010 WL 3420166, at *13-*16 (D. Or. Aug. 27, 2010); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005); Grasty v. Astrue, 661 F. Supp.2d 515, 523-24 (E.D. Pa. 2009); Jones v. Astrue, 570 F. Supp.2d 708, 715-16 (E.D. Pa. 2007) (and cases cited), aff'd, 275 Fed. Appx. 166 (3d Cir. 2008).  Any error the ALJ made in not questioning the VE about any deviation from the DOT in reasoning level of the identified jobs is harmless.  The VE identified the job of assembly machine tender, which is substantial evidence supporting the ALJ's step finding in this regard.  See Koch, 2009 WL 1743680, at *17; Jones, 570 F. Supp.2d at 716.

23 - REPORT AND RECOMMENDATION

The Court has determined that the ALJ erred in considering the opinions of Dr. Brewster and Dr. Alley, infra. While giving these physician's opinions "great weight," the ALJ did not include the limitation found by these physicians of occasional reaching in all directions and did not give any reasons for rejecting these opinions. The jobs that the ALJ found that plaintiff can perform–meter reader, security guard, and assembly machine tender– each require frequent reaching (existing 1/3 to 2/3 of the time), DOT 209.567-010; DOT 372.667-034; DOT 754.685-014, which is not consistent with the limitation to only occasional reaching found by the physicians.

**Conclusion**

The Court has found that the ALJ erred by failing to give proper reasons for discounting plaintiff's testimony; failing to properly consider the opinions of examining doctor, Dr. Brewster, and agency physician, Dr. Alley; and failing to give proper reasons for discounting the opinions of Dr. Blumenstein. Because of these errors, the hypothetical posed by the ALJ to the VE was based upon an incomplete RFC and is not supported by substantial evidence. The ALJ may not rely upon unsupported vocational testimony. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Therefore, the Commissioner's decision must be reversed. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully

developed and the evidence is insufficient to support the Commissioner's decision. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

In some circumstances, where the ALJ has improperly credited testimony or failed to consider it, the Ninth Circuit has credited the rejected testimony. See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996) (claimant's subjective symptom testimony, physicians' opinions, and lay testimony) (and cases cited); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (treating and examining physicians' opinions). Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen, 80 F.3d at 1292). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (citing Dodrill v. Shalala, 12 F.3d 915 (9th Cir. 1993); Nguyen v. Chater, 100 F.3d 1462 (9th Cir. 1996); Byrnes v. Shalala, 60 F.3d 639 (9th Cir. 1995); Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991), in which the courts remanded for credibility findings).

On this record, the Court exercises its discretion and remands for further administrative proceedings addressing the improperly evaluated evidence discussed above. See Connett, 340 F.3d at 876; Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053-54, 1056-57 (9th Cir. 2006) (remanding for further proceedings despite vocational expert testimony that constant supervision is unacceptable in competitive employment). If, on remand, the ALJ continues to discount plaintiff's treating physician, she should set out what evidence is inconsistent with Dr.

25 - REPORT AND RECOMMENDATION

Blumenstein's opinions. If necessary, the ALJ must revise the RFC analysis and apply the correct medical-vocational guideline or obtain vocational expert testimony regarding plaintiff's workplace limitations. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

## **RECOMMENDATION**

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be reversed and the matter remanded for further administrative proceedings consistent with the Court's Order, and that judgment be entered accordingly.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by February 15, 2011. If objections are filed, any response to the objections are due by March 4, 2011, see Federal Rules of Civil Procedure 72 and 6.*

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ___27___ day of January, 2011.

_____
MARK D. CLARKE
United States Magistrate Judge

27 - REPORT AND RECOMMENDATION